IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY W. WITZ, on behalf of himself and others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GREAT LAKES EDUCATIONAL LOAN SERVICES, INC., <br><br> Defendant. | No. 19-cv-06715 <br><br> Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jeffrey Witz borrowed money from the federal government to pay for his education. Defendant Great Lakes Educational Loan Services, Inc., manages repayment of federally insured loans for millions of student borrowers, including Plaintiff. Plaintiff sued Defendant on behalf of a purported class of similarly situated borrowers[1], alleging that Defendant breached the contract governing the loan by engaging in misrepresentations and failing to administer the loans in accordance with federal law. (*See generally* Dkt. 27.) Defendant now moves to dismiss, arguing that Plaintiff fails to state a claim for relief and has no right to sue for the alleged breach of contract. (Dkt. 29.) For the reasons stated below, Defendant's motion to

---

[1] The Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this suit has been brought on behalf of proposed classes, each in excess of one hundred members; the aggregate claims of the Class members exceed $5 million exclusive of interest and costs; and one or more of the members of each Class is a citizen of a different state than one or more Defendants.

dismiss is granted. Count I and Count II are dismissed with prejudice. Count III, Count IV, and Count V are dismissed without prejudice and with leave to replead.

I.  BACKGROUND

In September 2010, Plaintiff Jeffrey Witz entered into a master promissory note ("MPN") with the Department of Education (the "Department") to borrow money for school tuition. (*See* Dkt. 27 ¶ 28; 27-4.)[2] Plaintiff's MPN with the Department provides:

> Payments made by me or on my behalf will be applied first to late charges and collection costs that are due, then to interest that has not been paid, and finally to the principal amount of the loan, ***except during periods of repayment under an Income-Based Repayment Plan***, when payments will be applied first to ***interest that is due***, then to fees that are due, and then to the principal amount.

(Dkt. 27 at 4–5 (emphasis in original).) The MPN incorporated the Higher Education Act ("HEA"), 20 U.S.C. § 1070, *et seq.*, and the Department's regulations. (*See* Dkt. 27-4 at 1.) The Department, in turn, contracted with Defendant Great Lakes Educational Loan Services, Inc. (Defendant) to service Plaintiff's loans. (Dkt. 27 ¶ 7; Dkt. 27-1; Dkt. 27-2.) As part of its servicing contracts with the Department, Defendant collects loan payments, administers repayment programs on behalf of the

---

[2] Plaintiff attached four exhibits to his complaint: two servicing contracts between the Department and Defendant (Dkt. 27-1; Dkt. 27-2), a monthly statement Plaintiff received from Defendant (Dkt. 27-3), and the MPN (Dkt. 27-4). Plaintiff expressly cites to and describes these documents in his complaint. (*See generally* Dkt. 27.) It is well settled that, when ruling on a motion to dismiss, "a court may consider "documents . . . attached to the complaint, documents . . . central to the complaint and . . . referred to in it, and information that is properly subject to judicial notice.' " *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir. 2017) (quoting *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013)).

2

Department, and agrees to comply with the HEA and the Department's regulations. (Dkt. 27 ¶ 11.)

On its website, Defendant states that it offers "more flexibility" to borrowers by applying excess payments first to "accrued interest since your last payment" and then to "principal of the loan with the highest interest rate." (*Id.* ¶ 33.) Among various repayment options, Defendant offers an income-driven repayment ("IDR") plan, which allows borrowers to make monthly payments to Defendant based on their income, occupation, and family size. (*Id.* ¶ 11.) IDR plans also allow borrowers to apply for loan forgiveness after a certain number of qualifying payments. (*Id.*) IDR plans are, in relevant part, divided between income-contingent plans, known as Pay As You Earn ("PAYE") plans, and income-based repayment ("IBR") plans. *See* 34 C.F.R. § 685.209 (PAYE plans); 34 C.F.R. § 685.221 (IBR plans).[3]

In May 2018, Plaintiff held five loans under an IBR plan serviced by Defendant, numbered 721, 722, 723, 724, and 726. (Dkt. 27 ¶¶ 13–14.) Plaintiff's minimum required monthly payment under the plan was $394.41. (*Id.* ¶ 17; Dkt. 27-3.) Plaintiff alleges that, before May 2018, Defendant applied Plaintiff's minimum monthly payments only to interest. (Dkt. 27 ¶ 18.) In May 2018, however, Plaintiff alleges that the $394.41 payment represented "slightly more than the interest accruing on the loans each month." (*Id.* ¶ 19.) So, in an effort to pay off the loans as

---

[3] Both PAYE and IBR plans allow prepayment "at any time without penalty, as provided under § 685.211(a)(2)." *Id.* §§ 685.209(a)(3)(ii) (PAYE), 685.221(c)(2) (IBR). Section 685.211(a)(2) specifies that "[i]f a borrower pays any amount in excess of the amount due, the excess amount is a prepayment." *Id.* § 685.211(a)(2). Plaintiff uses various terms to refer to loan prepayments, but the term Plaintiff uses most commonly is "excess payments." (*See, e.g.*, Dkt. 27 ¶¶ 1, 29, 30.)

quickly as possible and to minimize the amount of interest paid, Plaintiff began to make monthly payments in excess of the required minimum. (*Id.* ¶ 20.) Starting in May 2018, Plaintiff made $1,000 monthly payments to Defendant, approximately $606.59 above the required minimum. (*Id.* ¶ 21.)

Plaintiff alleges that, between May 2018 and June 2019, out of each Plaintiff's $1,000 monthly payments, Defendant applied approximately $400 to interest and $600 to principal. (*Id.* ¶ 22.) By regularly making such excess payments, Plaintiff was able to pay off the 721 loan by July 2019. (*Id.* ¶ 23.) When Plaintiff made another $1,000 monthly payment in July 2019, however, Defendant applied the full amount towards interest only. (*Id.* ¶ 25.) Plaintiff alleges that, under the agreement with the government, Defendant was required to apply Plaintiff's excess payments "first to any interest due since the last date of payment, then to fees that are due since the last date of payment, and then to the principal amount." (*Id.* ¶ 29.) Plaintiff alleges that Defendants did not do this and instead "applied Plaintiff's July 2019 excess payment to interest that had previously accrued on the second '722' student loan, but was not 'due' under the income based repayment plan," exceeding its authority under federal law. (*Id.* ¶¶ 30–31, 36–37.) Plaintiff alleges that when he inquired as to why none of his "excess payment amount" had been applied to the principal loan, Defendant informed him that because Plaintiff had paid off one loan, and was applying excess payments to another loan, he "had to pay off 100% of the interest on 723 before anything would be applied to principal or the note." (*Id.* ¶ 38.)

4

Plaintiff filed suit on behalf of himself and others similarly situated, alleging that: (1) Defendant breached its servicing agreement with the Department by failing to administer Plaintiff's loans in accordance with federal law; (2) Defendant breached Plaintiff's MPN with the Department, under which Defendant is an assignee of the loan, by failing to administer Plaintiff's loans in accordance with federal law; (3) Defendant engaged in deceptive and unfair advertising practices on its website in violation of the Illinois Consumer Fraud Act; (4) Defendant negligently misrepresented its servicing contracts with the Department on its website; and (5) Defendant committed fraud by knowingly providing information on prepayments in a manner inconsistent with actual allocations. (*See* Dkt. 27 ¶¶ 49, 64, 77, 91, 103–04.)

Defendant now moves to dismiss the entirety of Plaintiff's complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Dkt. 29 at 1.) Defendant contends that: (1) Plaintiff, who is not a party to nor a third-party beneficiary of Defendant's servicing contracts with the Department, lacks standing to bring claims as to those contracts; (2) even if Defendant is an assignee of Plaintiff's MPN with the Department, Defendant complied with the Higher Education Act ("HEA") and federal regulations in applying Plaintiff's July 2019 excess payment to interest only and is thus immune from suit under *Yearsley v. W.A. Ross Construction Company*;[4] (3) even if *Yearsley* does not apply, Defendant complied with applicable regulations and its duties under its servicing contracts with the Department;

---

[4] 309 U.S. 18, 20–21 (1940) (there is no liability for federal contractors when authority is validly conferred by executing the government's will).

5

(4) Defendant did not engage in affirmative misrepresentations, and Plaintiff's claims impose requirements beyond federal or tort law; and (5) the class allegations are facially deficient. (*See id.* at 6–38.)

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction over a case. Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "are meant to test the sufficiency of the complaint, not to decide the merits of the case." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). When considering a Rule 12(b)(1) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Id.* But the plaintiff bears the burden of proving that the jurisdictional requirements have been met. *Id.*

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022). In evaluating a motion to dismiss, the Court must

6

accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

### III. DISCUSSION

#### A. Breach of Servicing Contract

In Count I, Plaintiff contends that Defendant breached its servicing contract between Defendant and the Department, and that Plaintiff can sue on that breach as an intended third-party beneficiary of the servicing contract. (Dkt. 27 ¶¶ 45–51.) Defendant argues that because Plaintiff "is neither a party to the contract nor a third-party beneficiary, he cannot sue to enforce its terms." (Dkt. 30 at 22–25.) In response, Plaintiff contends that, as an *intended* third-party beneficiary of the servicing contract, Plaintiff can enforce the servicing contract. (Dkt. 38 at 19–24.)

Federal common law governs interpretation of a federal contract. *Funeral Fin. Sys. v. United States*, 234 F.3d 1015, 1018 (7th Cir. 2000). To sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party. *See Montana v. United States,* 124 F.3d 1269, 1273 (Fed. Cir. 1997). In the case of government contracts, "individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." Restatement (Second) of Contracts § 313 cmt. a (1981). Because third-party beneficiary status is an "exceptional privilege," the "privilege should not be granted liberally." *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1259 (Fed. Cir. 2005).

7

Defendant contends that the Supreme Court's decision in *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), among other decisions, forecloses Plaintiff's attempt to enforce as a third-party beneficiary the servicing contract between Defendant and the Department. (Dkt. 30 at 23–25.) *Astra* involved the "Section 340B" drug ceiling-price program. 563 U.S. at 113. Section 340B capped prices that drug manufacturers could charge public hospitals and community health centers ("340B entities") for medications. *Id.* The Health Resources and Services Administration (HRSA), a unit of the Department of Health and Human Services (HHS), and private drug manufacturers entered into form agreements by which the drug manufacturers opted into the statutory scheme of the Section 340B drug-ceiling price program. *Id.* The 340B entities contended that the drug manufacturers were overcharging the 340B entities for medications, in violation of the form agreements between HRSA and the drug manufacturers. *Id.* at 116. The 340B entities brought suit against the drug manufacturers as third-party beneficiaries of the form agreements. *Id.*

The district court dismissed the complaint, holding that the form agreements conferred no enforceable rights on 340B entities. *See Cnty. of Santa Clara v. Astra USA, Inc.*, No. C 05-03740, 2006 WL 1344572, at *7–9 (N.D. Cal. May 17, 2006). But the Ninth Circuit reversed and held that covered entities, although lacking a right to sue under the statute, could maintain the action as third-party beneficiaries of the form agreements. *See Cnty. of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1252 (9th Cir. 2009). In turn, the Supreme Court reversed the Ninth Circuit, concluding that the third-party beneficiary suits were "incompatible with the statutory regime."

8

*Astra*, 563 U.S. at 113. Beginning with the point that the 340B entities lacked a private right of action under the statute, the Supreme Court acknowledged the principle that "recognition of any private right of action for violating a federal statute . . . must ultimately rest on congressional intent to provide a private remedy." *Id.* at 117 (citations, internal quotation marks, and alterations omitted). Although the 340B entities contended that they were intended third-party beneficiaries of the agreements, that the agreements "specifically name covered entities [340B entities] as the recipients of discounted drugs," and that the "very object" of the agreements was to benefit them by capping the price they would be charged (*id.* at 117–18 (internal quotation marks and alterations omitted)), the Supreme Court rejected that and noted that the form agreements

> simply incorporate statutory obligations and record the manufacturers' agreement to abide by them. The form agreements, composed by HHS, contain no negotiable terms. . . . [T]he 340B Program agreements serve as the means by which drug manufacturers opt into the statutory scheme. A third-party suit to enforce an HHS-drug manufacturer agreement, therefore, is in essence a suit to enforce the statute itself. The absence of a private right to enforce the statutory ceiling-price obligations would be rendered meaningless if 340B entities could overcome that obstacle by suing to enforce the contract's ceiling-price obligations instead. The statutory and contractual obligations, in short, are one and the same.

*Id.* at 118. As the Supreme Court further explained, the County "based its suit on allegations that the manufacturers charged more than the § 340B ceiling price, . . . not that they violated any independent substantive obligation arising only from the PPAs. Repeatedly, the County acknowledged that § 340B is the source of the contractual term allegedly breached." *Id.* at 118–19 (footnote omitted).

9

The Seventh Circuit has read *Astra* to hold that "a government contract that involves no negotiable terms but merely brings the other party to the contract under a statute (or, we can assume, a regulation) does not confer third-party beneficiary status on anyone." *Thomas v. UBS AG*, 706 F.3d 846, 852 (7th Cir. 2013) (citing *Astra*, 563 U.S. 110); *see also Baginski v. JP Morgan Chase Bank N.A.*, No. 11 C 6999, 2012 WL 5989295, at *3 (N.D. Ill. Nov. 29, 2012) (rejecting third-party beneficiary theory because the Seventh Circuit "clearly stated (albeit in dicta) that borrowers cannot sue for breach of an SPA because Congress did not create a private right of action under HAMP").

As in *Astra*, the servicing contract here mirrors the statute; the agreement "simply incorporates statutorily required terms and otherwise fails to demonstrate any intent to allow beneficiaries to enforce those terms." *Astra*, 563 U.S. at 119 n.4. Permitting a third-party suit to enforce the servicing contract would render "meaningless" the absence of a private right of action to enforce Defendant's statutory obligations under the servicing contract. *Id.* at 118. Plaintiff has failed to identify any language in the servicing contract that clearly shows an intent to permit enforcement by third parties. It is not enough that the borrowers benefit from Defendant's performance under the servicing contract, as such incidental benefit does not rise to the level of an intent to permit enforcement. As a result, Plaintiff's third-party contract claim is an improper attempt to enforce the HEA where no private right of action exists.

For these reasons, Count I is dismissed. *See, e.g.*, *Edelman v. United States Gov't*, No. 18-CV-2143, 2020 WL 7123175, at *11 (E.D.N.Y. Dec. 4, 2020) (dismissing breach of contract claim because plaintiff "fail[ed] to identify any language in the servicing contract between the DOE and Navient evidencing an intent to permit enforcement by borrowers . . . ."); *Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 284 (E.D.N.Y. 2020) (same); *Winebarger v. Pa. Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1092 (C.D. Cal. 2019) (same); *Hyland v. Navient Corp.*, No. 18cv9031, 2019 WL 2918238, at *8 (S.D.N.Y. July 8, 2019) (same). Because the flaw in this count cannot be cured by repleading, this dismissal is with prejudice. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018).

### B. Breach of Promissory Note

In Count II, Plaintiff alleges that Defendant, as the assignee of the MPN's servicing rights, breached the MPN by failing to administer Plaintiff's loans in accordance with federal law. (Dkt. 27 ¶¶ 61–66.) Defendant argues that, even if they are an assignee of Plaintiff's MPN, Plaintiff cannot sue for a breach because the Department, as assignor, is immune from liability based on sovereign immunity. (Dkt. 30 at 25–28; Dkt. 54 at 22–23.) Plaintiff counters that the immunity is waived based on the HEA, and Defendant cannot rely on the federal government's sovereign immunity. (Dkt. 38 at 26–27.)

Under the doctrine of sovereign immunity, the United States cannot be sued unless it gives express consent to the jurisdiction of the court in which it is sued. *Hercules, Inc. v. United States*, 516 U.S. 417, 422 (1996). Plaintiff has the burden to

11

demonstrate that the federal government has waived its sovereign immunity and consented to suit. *Macklin v. United States*, 300 F.3d 814, 819 (7th Cir. 2002). To carry that burden, a plaintiff must identify a federal statute in which "Congress has expressly and unequivocally waived the government's sovereign immunity." *Barmes v. United States*, 199 F.3d 386, 388 (7th Cir. 1999). All purported waivers of sovereign immunity must be "strictly construed, in terms of [their] scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). If a plaintiff fails to meet its burden of establishing that the federal government waived its sovereign immunity, the case must be dismissed. *Macklin*, 300 F.3d at 819.

A partial assignee can be sued for a breach of the assigned contractual obligations only if the assignor could also be sued for breach of contract. *In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*, 491 F.3d 638, 645 (7th Cir. 2007). Plaintiff contends nonetheless that the HEA waives the federal government's sovereign immunity and permits the government to be sued directly. (Dkt. 38 at 26.) In relevant part, § 1082(a)(2) of the HEA provides that the Secretary of Education may:

> sue and be sued . . . in any district court of the United States, and such district courts shall have jurisdiction of civil actions arising under this part without regard to the amount in controversy . . . ; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Secretary or property under the Secretary's control and nothing herein shall be construed to except litigation arising out of activities under this part from the application of sections 509, 517, 547, and 2679 of Title 28.

12

28 U.S.C. § 1082(a)(2). Although § 1082(a)(2) waives the federal government's sovereign immunity with respect to certain claims against the Secretary, the claims here do not fall within the scope of that statute.

To begin, § 1082(a)(2) waives sovereign immunity only with respect to claims "arising under" the HEA, but Plaintiff's claim is based on an alleged breach of his MPN (a breach of contract claim). In addition, the waiver set forth in § 1082(a)(2) was crafted to expressly exclude claims seeking an "attachment, injunction, garnishment or similar process" against the Secretary. *Id.* This exclusionary language bars Plaintiff's claims related to his student loans because Plaintiff is, in essence, seeking injunctive relief that would: (1) require an adjustment of his current outstanding loan balances; or (2) prohibit the federal government from collecting certain sums from him. But this Court lacks the power to order that remedy against the federal government. *See* 28 U.S.C. § 1082(a)(2) ("[N]o . . . injunction . . . shall be issued against the Secretary or property under the Secretary's control."). As a result, because the federal government would not have waived sovereign immunity under the HEA if Plaintiff's claims were asserted against it, Plaintiff cannot sue Defendant as a partial assignee. Count II is thus dismissed. Because the flaw in this count cannot be cured by repleading, the dismissal is with prejudice. *See Haywood*, 887 F.3d at 335.

    C.    **Disclosure Claims under State Law**

In Count III, Plaintiff alleges that Defendant engaged in deceptive and unfair practices in violation of Illinois law by: "(1) failing to apply prepayments in accordance with federal law; and (2) inducing prepayments through representations

13

on its website which do not in fact describe what it does with the money that is prepaid." (Dkt. 27 ¶¶ 76–79.) In Count IV, Plaintiff alleges that Defendant "negligently provided information about prepayments that was inconsistent with the manner in which it allocated prepayments." (*Id.* ¶¶ 89–82.) And in Count V, Plaintiff alleges that Defendant committed fraud by "knowingly provid[ing] information about prepayments that was inconsistent with the manner in which it allocated prepayments." (*Id.* ¶¶ 102–05.)

Defendant contends that these claims are all preempted by the HEA, and the Court should thus dismiss them. (Dkt. 30 at 28–31; Dkt. 54 at 24–26.) Defendant also contends that these claims fail because Plaintiff has alleged no damages. (Dkt. 30 at 31–32.) Finally, Defendant contends that, to the extent it is not preempted, Count IV specifically fails because Defendant does not owe Plaintiff a legal duty. (Dkt. 30 at 32–33; Dkt. 54 at 26.) Plaintiff counters that the claims are not preempted, and in fact they bolster the federal scheme by providing an enforcement mechanism at the state level. (Dkt. 38 at 27–32.) Plaintiff also argues that, as a third-party beneficiary, Plaintiff was owed a duty by Defendant. (*Id.* at 30–32.) These arguments are addressed in turn.

### 1. *These Claims Are Not Preempted.*

The HEA prohibits states from subjecting student loan servicers to liability for failing to disclose to student loan borrowers information outside of what is required under federal law. *See* 20 U.S.C. § 1098g ("Loans made, insured, or guaranteed pursuant to a program authorized by title IV of the [HEA] shall not be subject to any

14

disclosure requirements of any State law."). Defendant's website stated that "there are rules in your student loan agreement that all servicers are required to follow when applying payments," and "[t]he rules require that outstanding interest and late fees (if applicable[]) must be paid first, prior to a payment being applied to the loan principal." (Dkt. 27 ¶ 33.) Defendant's website also stated that any "excess" amount is automatically applied to accrued interest since the last payment and then to the principal of the loan with the highest interest rate. (*Id.*)

Plaintiff alleges that either: (1) Defendant should have applied all $606.59 Plaintiff paid above his monthly required payment in July 2019 to 723's principal, once interest accrued since his last payment had been paid, and none to the outstanding previously accrued interest on 723, (*see* Dkt. 27 ¶¶ 36–42); or (2) Defendant should be liable for not specifying in greater detail how it would apply the payments (*Id.* ¶¶ 91, 104). Put another way, Plaintiff alleges that Defendant should have applied Plaintiff's payments in a manner contrary to the federal requirements summarized on the website.

Defendant argues that "excess" refers to the amount remaining from a payment after all previously accrued interest on a loan and fees have been paid off, rather than the amount remaining on any payment made that is greater than his required monthly payment. (Dkt. 30 at 29–31.) Defendant contends that Plaintiff's claim, if successful, would impermissibly require Defendant to disclose to borrowers how it applies payments in greater detail than what is required under federal law,

15

and is thus preempted. (Dkt. 30 at 30–31 (quoting 20 U.S.C. § 1083(a)(10)); Dkt. 54 at 24–26.)

In support of this argument, Defendant relies heavily on *Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010), in which a borrower sought to pursue state law claims against a loan servicer for billing practices that were permitted under federal law. In *Chae*, the plaintiffs brought claims under California's consumer protection statute and accused the defendant of both "misrepresent[ation]" and "improper . . . disclosure" of information to borrowers about federal student loans. *Id.* at 942–43. To be sure, the Ninth Circuit held that the plaintiffs' attempt to assert claims under California law regarding certain billing statements and coupon books was expressly preempted by § 1098g of the HEA, but *Chae* also explained that the plaintiffs were not barred from pursuing claims regarding other fraudulent and deceptive practices. *Id.* at 943. In any event, however, the plaintiffs would not be permitted simply to "relabel[ ]" their preempted disclosure claims as misrepresentation claims. *Id.* at 943 (citation omitted).

In 2019, the Seventh Circuit construed *Chae* and explained that Section 1098g preempts omission claims, not affirmative misrepresentation claims. *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 649 (7th Cir. 2019). In *Nelson*, a borrower brought state-law consumer protection and tort claims, alleging that her federal student loan servicer made affirmative misrepresentations while counseling her on her repayment plan options. *Id.* at 642. Relying largely on *Chae*, the district court granted the defendant's motion to dismiss and held that the borrower's claims alleged

16

in substance only that the defendant failed to disclose certain information. *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, No. 17-CV-00183, 2017 WL 6501919 (S.D. Ill. Dec. 19, 2017).

But the Seventh Circuit reversed that holding and concluded that the borrower's claims were not expressly preempted:

> When a loan servicer holds itself out to a borrower as having experts who work for her, tells her that she does not need to look elsewhere for advice, and tells her that its experts know what options are in her best interest, those statements, when untrue, cannot be treated by courts as mere failures to disclose information. Those are affirmative misrepresentations, not failures to disclose. . . . A borrower who reasonably relied on them to her detriment is not barred by § 1098g from bringing state-law consumer protection and tort claims against the loan servicer.

*Nelson*, 928 F.3d at 642. *Nelson* also explained that "[t]he common law tort of fraud ordinarily requires a deliberately false statement of material fact. . . . An omission or failure to disclose, on the other hand, will not support a common law fraud claim but may be actionable as constructive fraud or fraudulent concealment . . . ." *Id.* at 649 (internal citations omitted). As the Seventh Circuit explained, *Chae* "does not apply to claims of affirmative misrepresentations in counseling borrowers in distress." *Id.* at 642. Indeed, *Chae* itself "limited the reach of some of its broader language by holding that other state-law claims, focusing on the 'use of fraudulent and deceptive practices apart from the billing statements,' are not preempted by § 1098g." *Id.* at 650 (quoting *Chae*, 593 F.3d at 943). Because the borrower alleged that the servicer "said something false that it was not required to say," the Seventh Circuit concluded that the claim did not implicate a disclosure requirement. *Id.*

17

Although the Seventh Circuit in *Nelson* did not adopt the reasoning of *Chae*, even if the Court assumes that uniformity is a purpose of the HEA, Plaintiff's state-law claims do not threaten that uniformity because the claims are predicated on misrepresentations of the requirements of the HEA, not an expansion of them. Defendant argues that *Chae* is on point because Plaintiff's remedy would require Defendant "to disclose the nut-and-bolts of where money from a payment must first be applied before money could be applied to principal." (Dkt. 30 at 31.) But the state-law issue in *Chae* imposed *additional* requirements on servicers regarding how to calculate loan interest. Unlike the plaintiffs in *Chae*, Plaintiff is not trying to supplant federal law, but only to obtain a civil remedy under state law for federal violations. As a result, Plaintiff's state law disclosure-based claims are not preempted.

2. *Plaintiff Failed to Allege he Suffered Any Damages.*

Defendant contends that Plaintiff did not allege that Plaintiff suffered any damages. (Dkt. 30 at 31–32.) Plaintiff failed to respond to this point (*see generally* Dkt. 38), and the Court agrees that Plaintiff fails to sufficiently allege that he suffered any actual damages. For Plaintiff to succeed on all of these claims, he would need to show that he has suffered damages. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005) (ICFA requires that actual damages were proximately caused by the deception); *Doe v. Dilling*, 888 N.E.2d 24, 35–36, 45 (Ill. 2008) (negligent misrepresentation claim requires damage to the plaintiff resulting from reliance on a statement); *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 7 (Ill.

18

App. Ct. 2001) (a fraud claim requires damage to the plaintiff resulting from the reliance). Although the First Amended Complaint does allege that Plaintiff suffered "damages" at various points, these are no more than conclusory allegations that fail to survive this motion to dismiss. More to the point, Plaintiff fails to address this argument entirely in his briefing on Defendant's motion to dismiss. (*See generally* Dkt. 38.) Accordingly, Counts III, IV, and V are dismissed. But because the flaw in some of these Counts can be cured by repleading, this dismissal is without prejudice.

3. *Plaintiff Is Not Owed a General Duty of Care from Defendant.*

Defendant contends that Count IV fails for an additional reason: Plaintiff is owed no duty of care from Defendant. (Dkt. 30 at 32–33; Dkt. 54 at 26.) Plaintiff appears to contend that its status as a third-party beneficiary of the servicing contract entitles him to a duty of care (*see* Dkt. 38 at 30–32), but the Court agrees with Defendant.

To state a claim for negligence in Illinois, a plaintiff "must establish the existence of a duty of care owed by the defendant." *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263 (Ill. 2007).[5] The mere existence of a relationship between a borrower and lender does not, in itself, create such a duty. *See Maxwell as Tr. for Est. of Garcia*

---

[5] To state a claim for negligent misrepresentation in Illinois, a plaintiff must allege:
> (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information.

*Hartford Fire Ins. Co. v. Henry Bros. Const. Mgmt. Servs., LLC*, 877 F. Supp. 2d 614, 618 (N.D. Ill. 2012) (citation omitted).

19

*v. Wells Fargo Bank, N.A.*, 2021 WL 1209023, at *5 (N.D. Ill. Mar. 31, 2021) ("Illinois does not, and would not, recognize a general duty of care owed by lenders to borrowers"). Rather, under Illinois law, lenders do not owe fiduciary duties to borrowers unless the borrower relies on a special relationship of trust and confidence with the lender. *See Pommier v. Peoples Bank*, 967 F.2d 1115, 1119 (7th Cir. 1992). Plaintiff fails to allege that Defendant owed him any duty, let alone that they were in a "special relationship of trust and confidence."

For this independent reason based on a lack of duty, Count IV must be dismissed. Although the Court is doubtful that such a relationship could be successfully alleged, *cf. Winebarger*, 411 F. Supp. 3d at 1092 (dismissing similar contentions with prejudice); *Hyland*, 2019 WL 2918238, at *11 (same), Plaintiff should be afforded the opportunity to replead Count IV. Accordingly, the dismissal of Count IV is without prejudice.

## IV. CONCLUSION

Defendant's motion to dismiss (Dkt. 29) is granted. Count I and Count II are dismissed with prejudice. Count III, Count IV, and Count V are dismissed without prejudice.

SO ORDERED in No. 19-cv-06715.

Date: September 30, 2024

_____
JOHN F. KNESS
United States District Judge