IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY W. WITZ, on behalf of himself and others similarly situated, | |
| Plaintiff, | No. 19-cv-06715 |
| v. | Judge John F. Kness |
| GREAT LAKES EDUCATIONAL LOAN SERVICES, INC., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jeffrey Witz borrowed money from the federal government to pay for his education. Defendant Great Lakes Educational Loan Services, Inc., manages repayment of federally insured loans for millions of student borrowers, including Plaintiff. Plaintiff sued Defendant on behalf of a purported class of similarly situated borrowers.[1] Plaintiff has refiled his complaint for the third time (the operative version is entitled the "Second Amended Complaint"), alleging violations of the Illinois Consumer Fraud Act ("ICFA"), unjust enrichment, and common law fraud. (Dkt. 88.) Defendant now moves to dismiss the Second Amended Complaint and argues that Plaintiff lacks standing, fails to state a claim for relief, and has improperly recast a

---

[1] The Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this suit has been brought on behalf of proposed classes, each in excess of one hundred members; the aggregate claims of the Class members exceed $5 million exclusive of interest and costs; and one or more of the members of each Class is a citizen of a different state than one or more Defendants.

claim for negligent misrepresentation as a claim for unjust enrichment. (Dkt. 93.) Defendant also moves to strike the class allegations for each of Plaintiff's claims. (Dkt. 92.) For the reasons stated below, Defendant's motion is granted in part and denied in part.

**I.     BACKGROUND**

As the Court has previously summarized (Dkt. 87), Defendant Great Lakes Educational Loan Services, Inc. ("Great Lakes") is a Wisconsin corporation that contracts with the United States Department of Education to service federal student loans. (Dkt. 88 ¶ 6.) As part of its servicing responsibilities, Defendant collects loan payments, administers repayment programs on behalf of the Department of Education, and agrees to comply with the federal law and the Department's regulations. (Dkt. 88 ¶ 11.) Among various repayment options, Defendant offers an income-driven repayment ("IDR") plan, which allows borrowers to make monthly payments to Defendant based on their income, occupation, and family size. (*Id.*) IDR plans also allow borrowers to apply for loan forgiveness after a certain number of qualifying payments. (*Id.*) IDR plans are, in relevant part, divided between income-contingent plans, known as Pay As You Earn ("PAYE") plans, and income-based repayment ("IBR") plans. *See* 34 C.F.R. § 685.209 (PAYE plans); 34 C.F.R. § 685.221 (IBR plans).[2]

---

[2] Both PAYE and IBR plans allow prepayment "at any time without penalty, as provided under § 685.211(a)(2)." *Id.* §§ 685.209(a)(3)(ii) (PAYE), 685.221(c)(2) (IBR). Section 685.211(a)(2) specifies that "[i]f a borrower pays any amount in excess of the amount due, the excess amount is a prepayment." *Id.* § 685.211(a)(2).

2

In May 2018, Plaintiff Jeffrey Witz held five loans under an IBR plan serviced by Defendant, numbered 721, 722, 723, 724, and 726. (Dkt. 88 ¶¶ 13–14.) Plaintiff's minimum required monthly payment under the IBR plan was $394.41. (*Id.* ¶ 17; Dkt. 88-1.) Plaintiff alleges that Defendant represented on its website that the "rules require that outstanding interest . . . must be paid first, prior to a payment being applied to the loan principal[,]" but "when it comes to excess payments [borrowers] have more flexibility." (Dkt. 88 ¶ 26.) Defendant's webpage further provided:

> We automatically apply excess to:
>
>    1. Accrued interest since your last payment.
>    2. Principal of the loan with the highest interest rate.
>
> Note: If you're in school, grace, or deferment, after outstanding interest for all loans has been paid it will be applied to the unsubsidized loan with the highest interest rate.
>
> If you prefer the excess to be applied to a different loan or loans within the account, define your Excess Payment Preference. This can be done for just one excess payment or for all future excess payments. . . .

(*Id.*) Before May 2018, Plaintiff made regular monthly payments that were equal to or exceeded the current amount due under his IBR plan. (*Id.* ¶ 16.) In that period, Defendant applied Plaintiff's minimum monthly payments only to interest. (*Id.* ¶ 18.) By May 2018, however, Plaintiff noticed that the $394.41 payment represented "slightly more than the interest accruing on the loans each month." (*Id.* ¶ 19.) To pay off the loans as quickly as possible and to minimize the amount of interest paid, Plaintiff began to make monthly payments in excess of the required minimum ("prepayments"). (*Id.* ¶ 20.) Starting in May 2018, Plaintiff made $1,000 monthly payments to Defendant, approximately $606.59 above the required

3

minimum. (*Id.* ¶ 21.) Plaintiff submitted the $1,000 payments based on Defendant's representation on its website. (*Id.* ¶ 29.) Between May 2018 and June 2019, Defendant applied approximately $400 to interest and $600 to principal out of each of Plaintiff's $1,000 payments. (*Id.* ¶ 22.) By regularly making such prepayments, Plaintiff paid off Loan 721 by July 2019. (*Id.* ¶ 23.) But when Plaintiff made another $1,000 monthly payment in July 2019, Defendant applied the full amount towards interest on Loan 723, applying none to the principal. (*Id.* ¶ 25.)

Plaintiff alleges that Defendant did not apply the excess payments in accordance with the representations on its website. Plaintiff states that when he inquired as to why none of his excess payments had been applied to the principal of Loan 723, Defendant responded that Plaintiff needed to "pay off 100% of the interest on Loan 723 before anything would be applied to principal or the note." (*Id.* ¶ 31.) Because the outstanding interest on Loan 723 that had accrued under Plaintiff's IBR plan exceeded $1,000, Defendant applied the entirety of the payment to the interest amount. (*Id.*) Plaintiff alleges that the application of the entire payment to outstanding interest on Loan 723 was inconsistent "with the representations on Great Lakes' website" because the website assured Plaintiff "that any excess payment [would be] applied first to interest accumulation since the last payment and then to principal." (*Id.* ¶ 33.) Plaintiff also alleges that Defendant failed to apply prepayments in accordance with federal law. (*Id.* ¶ 39.)

Plaintiff alleges that Defendant's representations on its website "deceive[s] borrowers into believing that all payments made in excess of the required monthly

4

payment will be applied to the principal" of an outstanding loan, which borrowers believe will shorten the length of the repayment plan and "thereby reduce the overall accrued interest[.]" (*Id.* ¶ 34.) Plaintiff further states that, because of Defendant's deception, the principal balance of borrowers' loans "is higher than it should be or would be had Great Lakes applied prepayments in accordance with its representations," and Plaintiff, along with similarly situated borrowers, have been "charged interest on the higher principal." (*Id.* ¶ 35.)

Following an oral motion to amend the initial complaint in this case (Dkt. 26), Plaintiff filed an amended complaint containing claims for breach of contract, violations of the ICFA, negligent misrepresentation, and common law fraud. (Dkt. 27.) Defendant filed a motion to dismiss the amended complaint in its entirety, which the Court granted. (Dkt. 87.) Plaintiff's claims for breach of contract were dismissed with prejudice, but the Court granted Plaintiff leave to replead his other claims. (*Id.*) Plaintiff then filed the Second Amended Complaint on behalf of himself and others similarly situated, alleging that: (1) Defendant engaged in deceptive and unfair advertising practices on its website in violation of 815 ILCS 505/2, the ICFA; (2) Defendant unjustly enriched itself by failing to apply prepayments in accordance with its representations; and (3) Defendant committed fraud by knowingly providing information on prepayments in a manner inconsistent with its actual allocation of the payments. (*Id.* ¶¶ 38–76.)

## II.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction over a case. Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "are meant to test the sufficiency of the complaint, not to decide the merits of the case." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). When considering a Rule 12(b)(1) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Id.* But the plaintiff bears the burden of proving that the jurisdictional requirements have been met. *Id.* Because "[s]tanding is an essential component of Article III's case-or-controversy requirement," defendants may seek the dismissal of nonjusticiable claims through a Rule 12(b)(1) motion for lack of subject matter jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*,

6

23 F.4th 774, 777 (7th Cir. 2022). As the Seventh Circuit has emphasized, a plaintiff need not "lay out every element or ingredient" of a claim to survive a Rule 12(b)(6) motion. *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1336 (7th Cir. 2024). Such "details and proof" come later, and all a plaintiff must do is "state a grievance." *Id.* at 1338. In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

### III. DISCUSSION

#### A. Article III Standing

To show that he has Article III standing, Plaintiff bears the burden of pleading "(i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relation between the injury and the challenged conduct . . . ; and (iii) a likelihood that the injury will be redressed by a favorable decision." *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004) (quotations omitted). Defendant argues that Plaintiff lacks standing because he does not plead an injury in fact to a legally protected interest. (Dkt. 93 at 5.) In the alternative, Defendant argues that Plaintiff lacks standing because a favorable decision from the Court could not redress Plaintiff's alleged injury. (*Id.*) Plaintiff alleges an injury in fact, however, by alleging that he faced an outsized loan principal as a result of Defendant's

7

representations on its website. This financial injury, moreover, may be redressed through a favorable decision from the Court awarding money damages.

      *i. Injury Under the ICFA Stemming from a Violation of Federal Law*

Plaintiff's Second Amended Complaint states that "Great Lakes engaged in deceptive and unfair practices, in violation of 815 ILCS 505/2[,]" by "failing to apply prepayments in accordance with federal law[.]" (Dkt. 88 ¶ 39.) Defendant states that Plaintiff's claim under the ICFA should be dismissed to the extent it stems from an injury tied to Defendant's failure to apply prepayments in accordance with federal law because Defendant complied with the applicable federal regulation. Although Plaintiff argues that 34 C.F.R. §§ 682.209 and 682.215 indicate that Defendant was obligated to apply prepayments to the loan principal, Defendant correctly highlights that § 682 applies to Federal Family Education Loans, whereas Plaintiff's loans are Direct Loans, meaning Plaintiff borrowed money directly from the Department of Education. *See Biden v. Nebraska*, 600 U.S. 477, 484 (2023) ("Direct Loans are, as the name suggests, made directly to students. . . . The Government also administers . . . FFELs—loans made by private lenders and guaranteed by the Federal Government."); (Dkt. 88-1 at 92 (showing that Plaintiff maintained "loan account(s)" with the Department of Education rather than a private lender).)[3] Direct Loans are regulated by 34 C.F.R. § 685, which provides that prepayments under an

---

[3] It is well settled that, when ruling on a motion to dismiss, "a court may consider 'documents . . . attached to the complaint, documents . . . central to the complaint and . . . referred to in it, and information that is properly subject to judicial notice.'" *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir. 2017) (quoting *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013)).

IBR plan must be applied to "[a]ccrued interest" on a loan before "[l]oan principal[.]" §§ 685.209, 685.211.

Because the Second Amended Complaint alleges that Defendant applied Plaintiff's prepayment to accrued interest on Loan 723 before the loan principal (Dkt. 88 ¶¶ 25, 31), Plaintiff does not allege a violation of § 685. Indeed, Plaintiff's briefing disputes the applicability of § 685 rather than arguing that Defendant failed to comply with it. (*See* Dkt. 94 at 6–7.) As a result, the Court declines to find that Plaintiff has standing to bring a claim under the ICFA on the grounds that Defendant failed to apply prepayments in accordance with federal law. But because the Second Amended Complaint provides an alternate injury under the ICFA stemming from Defendant's inducing of "prepayments through representations on its website which do not in fact describe what it does the money that is prepaid[,]" the Court also declines to dismiss the ICFA claim on the grounds of regulatory compliance. (Dkt. 88 ¶ 39.)

> *ii. Injury Stemming from Paying Interest on an Improperly Increased Principal*

With regard to each of Plaintiff's three claims, Defendant argues that the application of Plaintiff's prepayments to interest rather than the principal of Loan 723 fails to constitute an injury in fact. Defendant states that, because federal regulations require the application of payments to all accrued interest before any payment is directed to the principal of a loan, Plaintiff has no legal interest in ensuring its prepayment were applied to loan principal, given that accrued interest remained unpaid. But Plaintiff alleges that he and similarly situated individuals

9

were damaged because they "paid money to Great Lakes in the belief that it would be applied to prepay the principal of their loans" and because they were charged interest on a deceptively heightened loan principal. (Dkt. 88 ¶ 35.) Plaintiff's alleged injury is thus rooted in financial loss rather than a statutory or regulatory infraction, and a "financial injury creates standing." *Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011). In other words, the legal interest underlying Plaintiff's claims stems from Plaintiff's payment of money to Defendant caused by Defendant's representations of what it would do with the money, not Defendant's mere application of the payment to accrued interest rather than principal.

Defendant further argues that Plaintiff fails to demonstrate standing because he has not pleaded any allegations concerning an increase in principal or any wrongful increase in interest payments paid on the heightened principal. (Dkt. 93 at 7–8.) On the contrary, Plaintiff has alleged that the "principal balance" of Loan 723 "is higher than it should be or would be" after Defendant applied the $1,000 prepayment to accrued interest rather than principal despite Defendant's representations on its website. (Dkt. 88 ¶ 35.) As courts within the Seventh Circuit have held, a wrongfully heightened principal resulting in an increased level of interest constitutes a "sufficiently concrete and particularized actual injury to establish constitutional standing," as the financial injury flowing from excess interest on a heightened loan principal "is not speculation, but arithmetic." *See Dawson v. Great Lakes Edu. Loan Servs., Inc.*, 327 F.R.D. 637, 646 (W.D. Wis. 2018).

10

Defendant cites *Lyons v. Great Lakes Edu. Loan Servs., Inc.*, 2022 WL 602972, at *9 (D. N.J. Mar. 1, 2022) in insisting that "no injury would materialize" until Plaintiff has paid "a single dollar towards 'wrongfully' accrued student loan interest," but *Lyons*' reasoning is not as persuasive here as Defendant suggests. In *Lyons*, the plaintiffs had not submitted any payments at all to Great Lakes, leading the court to find that the injury was too speculative to provide standing. *Id.* In contrast to the *Lyons* claimants, Plaintiff has alleged that he made a $1,000 payment based on fraudulent representations, which did not decrease his loan principal as Defendant allegedly led Plaintiff to believe it would. Plaintiff has thus alleged a financial injury sufficient to establish Article III standing.

Defendant further argues that Plaintiff has no standing because a favorable ruling on the merits of his claims could not adequately address Plaintiff's alleged injury. But Defendant fails to explain why an award of damages—the relief that Plaintiff seeks in the Second Amended Complaint—would not suffice. Whether an injury is "redressable" depends on "the relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 593 U.S. 659, 660 (2021) (quoting *Allen v. Wright*, 468 U.S. 737, 753 (1984)). Because Plaintiff seeks judicial relief in the form of money damages to redress a financial injury, the Court sees no reason to doubt the redressability of Plaintiff's claims.

11

### B.  Failure to State a Claim Under Rule 12(b)(6)

#### i. *Failure to Allege Damages*

In addition to arguing that Plaintiff lacks standing to bring his claims, Defendant argues that the Second Amended Complaint fails to allege that Plaintiff or "similarly situated individuals suffered any damages." (Dkt. 93 at 8–9.) As discussed above, the Second Amended Complaint alleges that Plaintiff and other similarly situated borrowers (1) "paid money to Great Lakes in the belief that it would be applied to prepay the principal of their loans, when Great Lakes neither applied nor intended to apply it" to a principal, (2) the "principal balance of their loans is higher than it should be or would be" as a result, and (3) "they have been charged interest on the higher principal." (Dkt. 88 ¶ 35.) Despite Defendant's insistence that these allegations do not constitute "actual damages" (Dkt. 93 at 8–9), Plaintiff need not "lay out every element or ingredient" of a claim to survive a Rule 12(b)(6) motion. *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1336 (7th Cir. 2024). All Plaintiff must do is "state a grievance," and the Second Amended Complaint, which explains the way Plaintiff believes he was injured, contains sufficient facts to meet that standard. *Id.* at 1338 ("[D]etails and proof" come later, and all a plaintiff must do to survive a motion to dismiss is "state a grievance."). [4]

#### ii. *Plaintiff's Amended Claim for Unjust Enrichment*

Defendant argues that the Court should dismiss Plaintiff's claim for unjust enrichment (Count IV) because Plaintiff exceeded the scope of the Court's leave to

---

[4] Defendant notes in its reply brief that Plaintiff did not respond to certain arguments regarding Article III standing and damages in its briefing and submits that the Court should

12

replead a claim for negligent misrepresentation. (Dkt. 93 at 9.) Rule 15(a) of the Federal Rules of Civil Procedure, however, provides that courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Although district courts "have broad discretion" to deny leave "where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile," *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (internal quotations omitted), Defendant makes no showing of undue prejudice or any other condition that would suggest that the Court should inhibit Plaintiff's ability to amend his complaint. The Court therefore declines to dismiss Plaintiff's claim for unjust enrichment on the grounds that the amended claim exceeds the scope of the Court's leave.

Defendant also argues that Plaintiff has failed to properly plead a claim for unjust enrichment because the Second Amended Complaint contains no allegations showing that Plaintiff maintained an interest in the payments Defendant received for servicing his loans. (Dkt. 93 at 11.) The Court agrees. To state a claim for unjust enrichment, "'a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Cleary v. Phillip Morris Inc.*, 656 F.3d 511, 518 (7th Cir. 2011) (quoting *HPI Health Care*

---

accordingly dismiss Plaintiff's claims on those grounds. (Dkt. 98 at 3–4.) But a district court "may not grant a motion to dismiss *solely* because there is no response from the non-movant." *See Brockett v. Effingham County, Illinois*, 116 F.4th 680, 685 n.1 (7th Cir. 2024) (ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure). It is the "movant's burden" to demonstrate an entitlement to relief on the motion to dismiss, and the Court has "an independent duty to evaluate whether the movant has met that burden." *Id*.

13

*Servs.*, 131 Ill. 2d 145, 160 (Ill. 1989)). Unjust enrichment is "not a mode of imposing punitive damages; it is a means of recovering something that the defendant is not entitled to but is unfairly possessing to the plaintiff's detriment." *Id.* at 520. A plaintiff alleging unjust enrichment may seek to recover "a benefit which he gave directly to defendant, or one which was transferred to defendant by a third party." *Asch v. Teller, Levit & Silvertrust, P.C.*, 2003 WL 22232801, at *7 (N.D. Ill. Sep. 26, 2003) (citing *HPI Health Care Servs.*, 131 Ill. 2d at 161).

Plaintiff alleges that Defendant unfairly possesses compensation from the federal government "based on the principal balances of the loans it services" and thus alleges that a benefit was unfairly bestowed on a defendant by a third party. (Dkt. 88 ¶ 52.) To establish that the retention of a benefit conferred upon defendant by a third-party constitutes unjust enrichment, "a plaintiff must show that (1) the benefit should have been given to plaintiff, but the third party mistakenly gave it to defendant instead; (2) defendant procured the benefit from the third party through some type of wrongful conduct; or (3) plaintiff for some other reason had a better claim to the benefit than defendant." *Asch*, 2023 WL at *7 (citing *HPI Health Care Servs.*, 131 Ill. 2d at 161–62). A claim for unjust enrichment cannot survive, however, "where a plaintiff claims damages that rightfully belong to a third party." *Id.*; *see also Independent Trust Corp. v. Fidelity Nat. Ins. Co. of New York*, 577 F. Supp. 2d 1023, 1050 (N.D. Ill. 2008) ("[T]he plaintiff must [ ] have some interest in the property that a third party gave to the defendant.")

Plaintiff alleges that Defendant procured prepayments through "some type of wrongful conduct" in stating that Defendant failed "to apply prepayments in accordance with its representations[.]" (Dkt. 88 ¶ 52.) But Plaintiff alleges that Defendant received excess compensation from the federal government, a third party, and Plaintiff makes no showing as to why he would maintain an interest in that money and why it would not rightfully belong to the government instead. *See Asch*, 2023 WL at *7 (granting summary judgment for the defendant on an unjust enrichment claim where the plaintiff sought to recover fees paid to the debt collector defendant by a third party, the debt collector's client). Even assuming, therefore, that Defendant received excess compensation from the federal government, Plaintiff's unjust enrichment claim (Count IV) must be dismissed.

C. **Defendant's Motion to Strike Plaintiff's Class Allegations**

In addition to moving to dismiss each of Plaintiff's claims, Defendant also moves to strike each of Plaintiff's proposed class allegations. (Dkt. 92.) On a motion to strike class allegations where a plaintiff "has not yet had the benefit of class discovery," the burden "lies with the defendant . . . to definitively establish that a class action cannot be maintained consistent with the class allegations." *Dowding v. Nationwide Mut. Ins. Co.*, 490 F. Supp. 3d 1291, 1298 (N.D. Ill. 2020). In general, motions to strike class allegations are disfavored. *Harris v. Rust-Oleum Corp.*, 2022 WL 952743, at *3 (N.D. Ill. Mar. 30, 2022). A court may deny class certification "even before the plaintiff files a motion requesting certification." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (collecting cases). When the dispute is "factual"

15

and "discovery is needed to determine whether a class should be certified," however, it may be "premature to strike class allegations." *Gibson v. Albertsons Companies, Inc.*, 754 F. Supp. 3d 793, 801 (N.D. Ill. 2024). Moreover, even when a proposed class is "overbroad," such a defect "does not necessarily warrant striking" the allegations if "they would sufficiently support a narrower proposed class[.]" *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 297 (N.D. Ill. 2014). It is therefore "the rare case in which it is clear from the pleadings that the plaintiffs may not proceed as a class." *Moore v. Nicole Hupp & Associates, LLC*, 2023 WL 7166555, at *4 (N.D. Ill. Oct. 31, 2023) (internal quotations omitted).

Defendant first argues that Plaintiff's proposed classes are unascertainable, facially overbroad, and predominated by individualized factual issues. (Dkt. 93 at 12.) To show that the proposed classes are unascertainable, Defendant again argues that Plaintiff's allegations fail to show that the proposed class members suffered any injury. As discussed above, the Court disagrees that no injury has been alleged. To argue that the proposed classes are overbroad, Defendant notes that Plaintiff's proposed classes are not limited to borrowers who were allegedly deceived by Defendant's website. Plaintiff's proposed classes, however, may be narrowed later. Indeed, *Oshana v. Coca-Cola Bottling Co.*, a case cited by Defendant where an arguably analogous class was found to be impermissibly overbroad, addressed a motion for class certification, not a pre-discovery motion to strike. 472 F.3d 506, 513–15 (7th Cir. 2006).

16

Defendant also argues that class allegations should be stricken because too many "individual fact issues" predominate the proposed class. (Dkt. 93 at 13.) But whether factual issues prevent class certification should be assessed after discovery. *See Gibson*, 754 F. Supp. 3d at 801. *Thorogood v. Sears Roebuck and Co.*, which Defendant cites to exemplify a class impermissibly predominated by individual factual questions, addressed a post-discovery motion for class certification, allowing the court to assess the facts disclosed during discovery. 547 F.3d 742, 744 (7th Cir. 2008). Because Defendant does not definitively show at this stage that a class action cannot be maintained consistent with the class allegations, Defendant's motion to strike is denied.[5]

## IV. CONCLUSION

Defendant's motion to dismiss (Dkt. 92) is granted in part and denied in part.

SO ORDERED in No. 19-cv-06715.

Date: June 24, 2025

JOHN F. KNESS
United States District Judge

---

[5] Because Plaintiff's claim for unjust enrichment has been dismissed, Defendant's motion to strike the related class allegations is denied as moot.

17